**In re UNIVERSAL PROFILE, INC., Debtor.**

**PEACHTREE FEDERAL SAVINGS & LOAN ASSOCIATION, Plaintiff,**

v.

**UNIVERSAL PROFILE, INC., Defendant.**

**Bankruptcy No. 80–00358A. Adversary No. 80–0091A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Aug. 5, 1980.

See also, Bkrtcy., 6 B.R. 190; Bkrtcy., 6 B.R. 194; Bkrtcy., 6 B.R. 196.

William G. McDaniel, McDaniel, Chorey & Taylor, Atlanta, Ga., for defendant.

Alex McLendon, Atlanta, Ga., for plaintiff.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

This matter came before the Court on Plaintiff's "Petition to Obtain Relief from Stay by Adversary Proceeding under Rule 11–43" filed on February 6, 1980.

Universal Profile, Inc. (hereinafter referred to as "Debtor") is engaged in the development of real estate and the sale of developed real estate to others. Plaintiff made three construction loans to Debtor secured by deeds to secure debt on three undeveloped lots. These lots will be referred to as lots 3, 5 and 6. The proceeds of the loan were used to construct houses on these three lots. In addition to these three loans Debtor owes Plaintiff over $200,000.00 on a loan secured by nineteen unimproved lots. Debtor subsequently defaulted on these loans and on February 5, 1980 Debtor filed a petition under Chapter 11 of the Bankruptcy Code. Plaintiff was therefore precluded from foreclosing on the subject real property.

A preliminary hearing on Plaintiff's petition for relief was held before this Court pursuant to 11 U.S.C. § 362(e) at which both parties were permitted to present evidence. By order of this Court dated March 7, 1980 the automatic stay was allowed to remain in effect pending final hearing on Plaintiff's petition for relief. The Court found that the principal amounts outstanding on Plaintiff's debt were $80,000.00 with respect to Lot 3, $80,000.00 with respect to Lot 5 and $74,400.00 with respect to Lot 6 and that the interest rate on the loans was 9½% per annum. It was further found that the value of each of the lots was at least $100,-000.00 From these facts the Court concluded that Debtor's equity in the property was sufficient to provide adequate protection for Plaintiff's claim. However to ensure that Plaintiff's claim would suffer no economic erosion during the pendency of this case Debtor was ordered to provide additional protection in the form of monthly interest payments of $1,855.66 commencing on March 1, 1980 and continuing monthly thereafter until further order of the Court.

On April 11, 1980 Plaintiff amended its petition requesting permission to foreclose on its 19 unimproved lots. After a second hearing on Plaintiff's petition for relief the Court ordered that the Order of March 7, 1980 would remain in effect until the trial on the merits.

On August 1, 1980, another hearing was held on Plaintiff's petition for relief. This Court is again faced with the question of whether adequate protection has been provided for Plaintiff's claim.

The payments required by the order of March 7, 1980 have not been made for the months of June, July and August. Debtor admits that it has not complied with this Order but has proposed another scheme for the payment of its debts and for the provision of adequate protection for Plaintiff's claim.

To obtain funds to pay the claims of creditors Debtor proposes to sell its real property assets and to borrow money through J & S Enterprises, its wholly owned subsidiary. It is alleged that Debtor has a contract to sell one of the nineteen unimproved lots for $25,000.00 less a 10% real estate commission. If approved by this

Court and if this sale comes to fruition, Debtor will allegedly realize sufficient funds to pay the claims of Plaintiff, the claim of a Mr. Dwaine Hyder, and taxes due with more than $4,000.00 remaining for the estate.

Debtor has also obtained a contract to sell the house on Lot 3–J for the asking price of $128,500.00 less a real estate commission of $8,995.00 and a tax debt of about $1,000.00 leaving $116,500.00 to be distributed to Plaintiff and other lien claimants.

The Court is further requested to grant debtor permission to sell free and clear of liens the remaining two houses for $100,-000.00 each net to the estate and the remaining 18 unimproved lots for $20,000.00 each net to the estate.

Debtor asks permission to borrow money through the refinancing of an asset of J & S Enterprises, Inc. (hereinafter referred to as "J & S") a wholly owned subsidiary of Debtor. J & S currently has a case pending in this Court under Chapter 11 of the Bankruptcy Code.

On July 28, 1980 J & S filed "Debtor's Application to Borrow Funds Pursuant to 11 U.S.C. § 364(d)(1)." The application states that a Mr. Carl Berst is willing to loan J & S $54,000.00 provided he received a first lien on the real property of J & S which consists of 20 acres of unimproved real property. If approved, the $22,000.00 will be applied to satisfy the first mortgage deed of trust held by Mr. C. E. Fowler and his wife. The remaining $32,000.00 will be at the disposal of Debtor.

In a hearing of this nature the party opposing relief has the burden of showing that a creditor is adequately protected. 11 U.S.C. § 362(g); 2 Collier on Bankruptcy (15th Edition) ¶ 362.10, p. 362–56. The Court finds that the current amount of debt due by Debtor to Plaintiff is $96,643.50 on Lot 3–J; $97,492.96 on Lot 5–J; $90,864.55 on Lot 6–J and $227,298.32 on 19 unimproved lots. Debtor has proposed to sell its real property assets and to borrow money in order to obtain funds to pay Plaintiff's claim and the claims of other creditors.

The prospects for the success of Debtors proposal are dubious at best. At this time Debtor has obtained only two contracts for the sale of its real property assets. These sales may or may not be consummated. In either case Plaintiff will be required to wait for payment in satisfaction of its claim, an inequitable result considering that Plaintiff has not been receiving the payments Debtor is under Court Order to make.

This Court has strong reservations about Debtor's plan to borrow money through its subsidiary, J & S. From the proceeds of this loan only two of the creditors of J & S will be paid, those creditors being the holders of a first mortgage deed of trustee. The remainder of the funds will be used by Debtor. Debtor contends that the creditors of J & S have been sent notice of the application to borrow funds and no creditor has come forward with objections. The Court has examined the notice sent to the creditors of J & S and is compelled to conclude that it does not sufficiently inform the creditors of the upstreaming this proposal entails. If such a loan were approved only two of J & S's creditors would receive payment of their claims from the proceeds. The claims of the remaining creditors would be subordinated to the first lien of Mr. Bush. Furthermore the remaining funds would be used by Debtor for its own benefit while J & S would be saddled with a $54,-000.00 debt. This Court is not favorably inclined toward making J & S a sacrificial lamb for its parent company.

Having received Debtor's proposal this Court concludes that Debtor has failed to meet the burden of showing that Plaintiff's claim is adequately protected. It is therefore

ORDERED that the automatic stay shall be and same is hereby lifted pursuant to 11 U.S.C. § 362(d); and it is further

ORDERED the Plaintiff may immediately proceed to foreclose on its interests in the three improved lots and nineteen unimproved lots; and it is further

ORDERED that J & S may resubmit a proper notice to creditors of its application to borrow money and the Court will then consider the application.