In re RAM MANUFACTURING, INC. (A Florida Corporation).

In re AMPRO CORPORATION (A Pennsylvania Corporation), Debtors.

AMERICAN BANK AND TRUST CO. OF PA., Plaintiff,

v.

RAM MANUFACTURING, INC., Ampro Corporation and Samuel Alper, Trustee, Defendants.

Bankruptcy Nos. 83–00101G, 83–00102G.
Adv. No. 83–0539G.

United States Bankruptcy Court,
E.D. Pennsylvania.

Sept. 16, 1983.

Marjorie O. Rendell, Marshall A. Fleisher, Duane, Morris & Heckscher, Philadelphia, Pa., for plaintiff, American Bank and Trust Co. of Pa.

Thomas B. Rutter, Rutter, Turner, Stein & Solomon, Philadelphia, Pa., for debtors/defendants, Ram Mfg., Inc. and Ampro Corp.

Donald M. Collins, Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for trustee/defendant, Samuel Alper.

Samuel Alper, Philadelphia, Pa., Trustee, pro se.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

A creditor has filed a request for relief under 11 U.S.C. § 362(d)(1) and (d)(2) of the Bankruptcy Code seeking a modification of the automatic stay imposed by § 362(a) in order to foreclose a mortgage on the debtor's real property. The debtor has responded, inter alia, with a counterclaim seeking the use of cash collateral as provided in § 363 of the Bankruptcy Code. For the reasons stated herein we will deny the use of cash collateral and will modify the stay.

The facts of the case are as follows:[1] Ampro Corporation ("Ampro") and Ampro-

Scully International, Inc. ("ASI"), are wholly owned subsidiaries of the debtor, Ram Manufacturing, Inc. ("Ram"). The principal offices of these three corporations are located in Montgomery County, Pennsylvania. Ram and Ampro filed for reorganization under chapter 11 of the Bankruptcy Code on January 7, 1983, and ASI filed under the same chapter shortly thereafter. The three debtors ceased conducting business on or about January 14, 1983. Several years prior to the filing of the foregoing petitions, American Bank and Trust Company of Pennsylvania ("bank") loaned Ram $300,000.00. Subsequently this loan was increased to $500,000.00 and then to $700,000.00. In exchange for these loans Ram granted the bank a security interest in all existing and after-acquired accounts receivable, contract rights, chattel paper, machinery, equipment, inventory, general intangibles and proceeds thereof. In increasing Ram's loan from $500,000.00 to $700,000.00, the bank requested and received the written guarantees of Ampro and ASI which were secured by the same type of collateral as that held by Ram. Ram is also indebted to the bank on a $440,000.00 loan granted under the aegis of the Montgomery County Industrial Development Authority ("MCIDA"). Under this loan the bank holds a perfected security interest in Ram's accounts, inventory, machinery, equipment, furniture, furnishings, subleasehold improvements and fixtures purchased with the loan money. The aggregate indebtedness under the $440,000.00 and $700,000.00 loans totalled $1,176,942.00, including principal, interest and late charges as of May 18, 1983. Ram, Ampro and ASI have been in default on the two loans for a substantial period of time while interest continues to accrue at a rate in excess of $346.00 per day. The value of the collateral available to the bank to satisfy the secured indebtedness is $643,815.00 which is the value of the following: cash, $140,000.00; inventory of component parts and finished goods, $330,-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

000.00; consoles, $75,000.00; and equipment and furniture, $98,815.00.

■ Immediately upon the filing of the petition for reorganization an automatic stay arises which generally bars all debt collection efforts against the debtor or the property of the bankruptcy estate. § 362(a). The bank has commenced proceedings in this court pursuant to § 362(d) to modify the stay in order to foreclose its security interest in the debtor's collateral. Section 362(d) provides as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

In addressing § 362(d)(1) the bank asserts that relief can be granted "for cause" due to the lack of a sufficient equity cushion protecting its security interest. A creditor's substantiated averments on this basis, if not refuted or undercut by the debtor, are sufficient for granting relief under § 362(d)(1). *Provident Mutual Life Ins. Co. v. Winslow Center Associates (In Re Winslow Center Associates),* 32 B.R. 685, at 687 (Bkrtcy.E.D.Pa. September 7, 1983); *Clark Equipment Credit Corp. v. Kane (In Re Kane),* 27 B.R. 902, 904 (Bkrtcy.M.D.Pa. 1983). The evidence educed at trial indicates that the $1,176,942.00 indebtedness is secured by only $643,815.00 of collateral. In light of this fact and the authority of *Winslow Center Associates* and *Kane* we find that the bank has established a prima facie case for relief under § 362(d)(1).

■ Although the trustee of Ram has properly stated that the debtor's uncollected accounts receivable and numerous outstanding lawsuits against third parties form a part of the collateral securing the bank's claim, he contends that this collateral should be valued and considered in adjudicating the bank's request for relief from the stay. We disagree. Since the bank has predicated its request for relief from the stay on § 362(d)(1) due to the lack of adequate protection of its security interest, the only collateral which can properly be considered is property which affords the secured creditor such adequate protection. Three nonexhaustive examples of this protection are listed in 11 U.S.C. § 361 which states as follows:

§ 361. Adequate protection

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

As stated in the legislative history "the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6295. We recently construed this to mean

"that adequate protection for a secured creditor means that the creditor must receive the same *measure* of protection in bankruptcy that he would have had outside of bankruptcy although the *type* of protection may differ from the bargain initially struck between the parties." *In Re Winslow Center Associates, supra,* at 688. In *Winslow* we found that unsecured promises of the debtor or third parties were generally insufficient to constitute adequate protection. Since security interests in unrealized accounts receivable and pending lawsuits are predicated on a third party's ability, or unsecured promise, to repay, they typically do not have sufficient integrity under § 361 to protect adequately a creditor's eroding security interest in real property. This typical situation is presented in the case at bench and consequently the receivables and pending lawsuits will not be considered in determining adequate protection.

The trustee has also asserted that since the debtor has filed for relief under the reorganization provisions of the Bankruptcy Code, its collateral is properly valued on a going concern basis. The Bankruptcy Code does not provide the proper standard to be applied in valuing collateral to determine if a creditor's security interest is adequately protected. The legislative history indicates that this omission was intentional and purposeful. In part the history states as follows:

The section specifies two[2] exclusive means of providing adequate protection, both of which may require an approximate determination of the value of the protected entity's interest in the property involved. The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case

interpretation and development. In light of the restrictive approach of the section to the availability of means of providing adequate protection, this flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes although forced sale liquidation value will be a minimum.

In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations arising from the facts of the case. Finally, the determination of value is binding only for the purpose of the specific hearing and is not to have a res judicata effect.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 54, *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, at 5840. The House Report contains similar statements:

The section specifies four[3] means of providing adequate protection. They are neither exclusive nor exhaustive. They all rely, however, on the value of the protected entity's interest in the property involved. The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of val-

---

**2.** S.Rep. No. 95–989, from which the quoted language is taken, accompanied S. 2266 which provided only two means of providing adequate protection; current 11 U.S.C. § 361(3) was omitted.

**3.** H.R.Rep. No. 95–595, from which this quoted language is taken, accompanied H.R. 8200 which provided four nonexclusive means of

providing adequate protection. A provision which was later deleted stated that the debtor could provide adequate protection by granting an administrative priority to the extent that the stay or use of the property resulted in a decrease in value of the creditor's interest in the property.

uation is not specified precisely, in order to avoid that result. There are an infinite number of variations possible in dealings between debtors and creditors, the law is continually developing, and new ideas are continually being implemented in this field. The flexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes. In any particular case, especially a reorganization case, the determination of which entity should be entitled to the difference between the going concern value and the liquidation value must be based on equitable considerations based on the facts of the case. It will frequently be based on negotiation between the parties. Only if they cannot agree will the court become involved.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 339, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, at 6295. In the case at bench the debtor ceased business operations within several days of the filing of the petition for reorganization and has not yet proposed a plan. In light of these facts we find that the proper standard of valuation is distress sale value.

■ Lastly, the trustee has asserted three points in urging that relief from the stay be denied. First, he alleges that MCIDA is an indispensable party in this proceeding. We find that under Bankruptcy Rule 7019, which deals with joinder of persons needed for just determination, the trustee has presented no colorable claim. Second, the trustee contends that the domicile of ASI is Florida and, as such, the bank failed to perfect its security interest in ASI's property by filing financing statements only in Pennsylvania. We have found that ASI is domiciled in Pennsylvania. Third, the trustee asserts that no consideration was given by ASI and Ampro in exchange for their granting a security interest in their respective corporate assets to the bank. To the contrary, ASI and AMPRO each suffered a detriment by signing the guarantees in exchange for the detriment suffered by the bank, increasing the size of the loan to Ram. An exchange of detriments is sufficient to support this third party beneficiary contract. *Bucks County Bank & Trust Co. v. DeGroot,* 226 Pa.Super. 419, at 424, 313 A.2d 357, at 359 (1973).

■ Lastly, we address the trustee's claim for the use of cash collateral under § 363. In pertinent part § 363 states as follows:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

Since we have found that the bank's security interest in the collateral is not adequately protected, any further depletion of the collateral under § 363 is barred under § 363(e). Consequently, the trustee's request for the use of cash collateral will be denied.

■ In conclusion, since the bank has met its burden of establishing a prima facie case for relief under § 362(d)(1), which burden the trustee has not refuted, we will grant the request for relief and modify the automatic stay. As stated above we will deny the use of cash collateral.