In re Melonaise HEATH, Debtor.

Bankruptcy No. 86–00060 T.

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 19, 1987.

Mitchell I. Aglow, Doylestown, Pa., for Mid–States Mortg. Corp.

Judith L. Jones, Lehigh Valley Legal Services, Allentown, Pa., for debtor.

Frederick L. Reigle, Reading, Pa., trustee.

## MEMORANDUM AND OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Mid–States Mortgage Corp. ("Mid–States") has filed this motion for relief from the automatic stay against Melonaise Heath ("debtor"), a co-owner of property subject to Mid–States[1] first lien position. In spite of debtor's failure to make any post-petition mortgage payments, we find that the current equity cushion adequately protects Mid–States' interest. Thus, we deny the motion without prejudice to any refiling by Mid–States at a later date.

This chapter 13 case was filed on January 6, 1986. It is undisputed that debtor has made no payments to Mid–States during the post-petition period. The parties agree that the appraised value of the property is $32,000.00 and that Mid–States holds a first lien in the amount of approximately $23,000.00.

Section 362(a) of the Bankruptcy Code automatically takes effect at the moment that a bankruptcy petition is filed, proscribing a wide variety on actions and suits against the debtor. 11 U.S.C. § 362(a)(1)–(a)(8). Creditors may, however, request that the Court grant relief from the § 362(a) stay. Mid–States has invoked a provision of the Code that provides that the Court shall grant relief "... (1) for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

The Code outlines the basic burdens of proof under § 362:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g). Our colleague, Judge Scholl, has amplified this section by noting that

> "... despite the language of § 362(g)(2), the moving creditor has an initial burden of showing prima facie "cause" for relief before any burden attaches to the debtor.

*In re Grant Broadcasting of Philadelphia,* 71 B.R. 376, 385 15 B.C.D. 949, 955 (Bankr.E.D.Pa.1987), *citing In re Stranahan Gear Co.,* 67 B.R. 834, 836–38 (Bankr. E.D.Pa.1986).

■ Mid–States has clearly shown sufficient "cause" to make a prima facie case and shift the burden to debtor.[2] As we have previously noted,

> (a) debtor's failure to make regular mortgage payments as they become due can constitute "cause" for relief from the

---

1. Thomas Heath, whose whereabouts are unknown, is the co-owner of this property. The property is located in Lantana, Florida.

2. Mid–States is under the mistaken impression that it should automatically be granted relief upon a showing of cause. *See* Memorandum of Law in Support of Plaintiff's Motion, p. 3.

automatic stay pursuant to § 362(d)(1). *See In re Frascatore*, 33 B.R. 687 (Bkrtcy.E.D.Pa.1983); *In re Hinkle*, 14 B.R. 202 (Bkrtcy.E.D.Pa.1981); *Ukrainian Sav. and Loan Assoc. v. Trident Corp.*, 22 B.R. 491, 495 (D.C.E.D.Pa. 1982).

*Germantown Savings Bank v. Keays (In re Keays)*, 36 B.R. 1016, 1017 (Bankr.E.D. Pa.1984). *Accord, In re Wright, Egan & Associates*, 60 B.R. 806, 807 (Bankr.E.D.Pa. 1986), and cases cited therein.

Debtor realistically acknowledges this failure to pay and rebuts Mid–States' prima facie case by focusing on the argument that the existence of an equity cushion provides adequate protection. The Code outlines means of providing adequate protection in a list that is neither exclusive nor exhaustive. *See* 11 U.S.C. § 361 and Historical and Revision Notes, § 361, Notes of the Committee on the Judiciary, Senate Report No. 95–989. The Court may grant "... such other relief ... as will result in the realization by such equity of the indubitable equivalent of such entity's interest in property." 11 U.S.C. § 361(3). The existence of an equity cushion may provide sufficient protection of a lender's interests. Application of the equity cushion concept has been so widespread that it has been denominated a "classic form" of protection for secured debt. *See e.g., In re Curtis*, 9 B.R. 110, 112 (Bankr.E.D.Pa.1981).

Our definition of "equity cushion" is the value in the property, above the amount owed to the creditor with a secured claim, that will shield that interest

from loss due to any decrease in the value of the property during the time the automatic stay remains in effect.

*In re Roane*, 8 B.R. 997, 1000 (Bankr.E.D. Pa.1981), *aff'd* 14 B.R. 542 (D.C.E.D.Pa. 1981). Applying this definition, we compare Mid–States' $23,000 secured position with the $32,000 appraised value, and discover a $9,000 equity cushion. Expressed another way, this is a thirty-nine (39%) percent equity cushion.[3]

■ Debtor is correct that courts have found adequate protection in situations in which even very low equity cushions existed.[4] We feel constrained to note that this 39% figure is higher than many of the equity cushions discussed in the case law.[5] But we refuse to engage in the mechanistic exercise of "comparing cushions" because we must look at the larger picture presented by all the facts in this case. Factors that we can consider in addition to the size of the equity cushion include (1) the rate at which the cushion will be eroded; (2) whether periodic payments can be made to mitigate the erosion; (3) the likelihood of a reasonably prompt sale;[6] (4) debtors probability of success (in a reorganization);[7] (5) the availability of other protection for the creditor.[8]

■ Focusing on one of these factors, Mid–States argues that the mortgage delinquencies have been steadily eroding the equity cushion, concluding that *"(t)his in and of itself* is sufficient reason to grant relief from the automatic stay." (cites admitted) *See* Memorandum of Law in Sup-

---

**3.**
$32,000.00 (appraised as fair market value)
− 23,000.00 (minus first lien)
_____
  9,000.00 (resulting equity)
23,000.00 (divided by total encumbrances)
_____
    39%

**4.** *See e.g., In re Riggins*, 20 B.R. 608 (Bankr.E.D. Pa.1982) (apprx. 15%); *In re McGowan*, 6 B.R. 241, 6 B.C.D. 1001 (Bankr.E.D.Pa.1980) (10%).

**5.** See the cases discussed *infra* at n. 3. Judge Scholl has noted the "magnitude" of a 27½% equity cushion (perhaps because the 27½% represented twenty-five million dollars). *In re*

*Grant Broadcasting, Inc.*, 71 B.R. 376, 383–84. Judge Fox described an 8.9% equity cushion as "slim." *In re Liona Corp.*, 68 B.R. 761, 767 (Bankr.E.D.Pa.1987). Both considered factors other than the size of the cushion. *Supra* at n. 8.

**6.** *In re Liona Corp.*, 68 B.R. 761, 768 (discussing factors 1–3).

**7.** *In re Grant Broadcasting*, 71 B.R. 376, 387, 15 B.C.D. 949, 957 (referring to the possibility of a successful reorganization).

**8.** *Sanders v. Tucker (In re Tucker)*, 5 B.R. 180, 182, 6 B.C.D. 699, 701, 2 C.B.C.2d 535, 539, Bankr.L.Dec. para. 67,955 (Bankr.S.D.N.Y.1980).

port of Plaintiff's Motion, p. 3 (emphasis added) ("Plaintiff's Brief"). We disagree. The cases cited by Mid–States do not suggest that an eroding equity cushion *alone* is a sufficient reason to grant relief.[9]

Further, the only factor cited by Mid–States as a cause of this erosion is debtor's failure to make the monthly mortgage payments. This is one of the most common examples of "cause" used to establish a plaintiff's § 362 prima facie case. Under Mid–States' analysis, once a plaintiff established such a prima facie case, a debtor could never use the equity cushion to provide adequate protection—because the missed payments would consequently eke away the cushion. Taken to its logical conclusion, Mid–States' analysis destroys the concept of the equity cushion. In light of the case law affirming application of the equity cushion, we find Mid–States' argument untenable. Our goal in positing adequate protection should be allowing the creditor to ultimately receive value, *see generally*, Notes of Committee on the Judiciary, House Report No. 95–595, which may occur despite some slight erosion in the equity cushion.

We also disagree with Mid–States' bold assertion that "(e)ven where a creditor is not faced with actual or possible diminution in value of its security, the debtor *must* afford adequate protection in the form of interest payments." Plaintiff's Brief, p. 3 (emphasis added) The cases cited by plaintiff do not support this argument.[10]

Mid–States has never responded to debtor's "New Matter," which states that the property "... is in good condition ... and is in a neighborhood with appreciating property value." Debtor's Answer and New Matter, para. 10. Although we cannot quantify this possible appreciation, it is a factor to weigh against the failure to make payments.

On the other side of the balance sheet, it is undisputed that debtors are not now making payments, which may cause some slight erosion of the equity cushion. The property is located in a distant state which makes Mid–States' informal review of its condition difficult. The property has been listed with a local real estate agent, which will facilitate the flow of information regarding the condition of the property.

Under the circumstances, in light of the particularly substantial equity cushion, we will deny Mid–States' motion. Since we are cognizant of Mid–States' concerns that the failure to pay may be causing some slight erosion of the equity cushion, this denial is without prejudice.

An appropriate order will follow.

---

9. Mid–States cites the following cases: *In re Keays*, 36 B.R. 1016, 1017 (We referred to several factors influencing our decision—an eroding equity cushion was merely one factor.); *In re Ukrainian Sav. and Loan Assoc. v. Trident*, 22 B.R. 491, 495 (The court considered other factors, including the slimness of the equity cushion.); *In re AZJZ, Inc.*, 22 B.R. 966, 968 (Bankr.E.D.Pa.1982) (The court considered lack of a current agreement of sale, the conjectural nature of the manner in which the plan would provide adequate protection and other circumstances).

10. The sentence in plaintiff's brief contains a partial quote from the beginning of a sentence from a Minnesota decision. *In re Lilyerd*, 49 B.R. 109, 117 (Bankr.D.Minn.1985) The sentence concludes that interest payments must be pro-

vided "... to compensate an *undersecured* party for its loss of the present opportunity to liquidate its security and reinvest the proceeds." *Id.* (cites omitted) (emphasis added). The concerns of undersecured creditors differ from the concerns of creditors who, such as Mid–States, are adequately secured. The second decision cited by Mid–States also involved an *undersecured* creditor. *Crocker National Bank v. American Mariner Industries, (In re American Mariner Industries)*, 734 F.2d 426, 427 (9th Cir.1984) In fact, the *American Mariner* case stands for a proposition *directly contrary* to the point for which Mid–States cited it: "We agree that (interest payments are) one method of providing adequate protection *but by no means the only method* available to the debtor ..." *Id.* at 435.