**In re MORYSVILLE BODY WORKS, INC., Debtor.**

**Bankruptcy No. 82–02550 T.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 10, 1988.

Craig S. Boyd, Boyertown, Pa., for debtor.

Patricia K. Younce, Bala Cynwyd, Pa., for movant Small Business Admin.

## MEMORANDUM OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

The Small Business Administration ("SBA") presses this motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), § 362(d)(2)(A) and § 362(d)(2)(B) against Morysville Body Works, Inc. ("debtor"), an entity which received a $250,000 second mortgage loan now held by the SBA [1]. Considering the evidentiary burdens in this case, we find that the Debtor has equity in its real property, and that the existing "equity cushion" is sufficient to provide the SBA with "adequate protection" in spite of debtor's failure over a 55 month period to make the requisite mortgage payments. The SBA has presented no evidence regarding the value of the equipment and furnishings securing the loan, and thus the equity cushion is even larger than reflected in the calculations contained herein. We deny this motion without prejudice because of the rapidly eroding equity cushion and the length of time this case has remained pending without submission of a Plan of Reorganization.

Two and one-half years after debtor filed a voluntary petition in bankruptcy, the SBA filed this motion for relief from the automatic stay. At the hearings held in this matter, the SBA's loan officer, William D. McMullen, testified as to the present status of the SBA mortgage, and appraisers for both parties offered their expert valuation testimony.

The property in question comprises all of debtor's real and personal property, excluding inventory. The real property consists of 17.93 acres of improved land with an eighteen building industrial complex, including three small airplane hangers, a small landing strip and a detached two story dwelling. The main portion of the property is zoned industrial and the rear portion is zoned to allow residential townhouses. The debtor manufactures utility type truck bodies on the property.

## I. THE INTERPLAY OF § 362(d)(1) AND § 362(d)(2)

### A. The Valuation Issue

The common thread binding these inquiries is our starting point: the value of these properties. The SBA's appraiser testified that the value of the real property is $375,000. The debtor's expert arrives at the much higher figure of $934,000. Our obvious task is to evaluate the methods and assumptions utilized by these appraisers.

██ Debtor's expert witness, Richard E. Rehrer, testified that he had appraised the property in 1981 for the SBA's predecessor, the originator of the loan, Hamilton Bank. He determined that the fair market value at that time was $864,500. N.T. 4/28, p. 21. He further testified that the value of the property is now $934,000.[2]

---

1. Under a guarantee agreement with its predecessor, Hamilton Bank, SBA is the holder of a certain Note, Mortgage, Security Agreement and UCC filings securing real estate, machinery, equipment, furniture and fixtures, in connection with a $250,000 second mortgage loan made in 1981 to debtor.

2. Rehrer prepared his written appraisal four months after the hearing, and debtor then submitted it as an exhibit to its post-trial brief. We reiterate this court's position that the attachment of an exhibit to a pleading does not serve

to move the pleading into evidence. *See e.g., In re Aughenbaugh*, 125 F.2d 887, 889 (3d Cir. 1942); *In re Paolino*, 72 B.R. 555, 557 n. 5 (Bankr.E.D.Pa.1987); *aff'd* 75 B.R. 553 (E.D.Pa. 1987) (appraisal not admitted into evidence and therefore not considered on motion for reconsideration). *Aughenbaugh* flows from the Supreme Court decision in *Interstate Commerce Commission v. Louisville & Nashville R. Co.*, 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431 (1913), which suggests that the essential characteristic of a hearing is the ability to test, explain or refute evidence. We realize that we may, in

The extensive and complete testimony from debtor's appraiser shows us that he is a local resident who conducts his business in the area in which the debtor's property is located. He impressed the court as being extremely familiar with local property values. N.T. 4/28, pp. 21, 22 and 28. Explaining the basis for his current appraisal, he testified that land values in the area have increased since 1981, and that the value he had assigned to the land in 1981 had increased to a 1986 figure of $270,000. He added to this the value of the buildings, subtracted the value of two pieces of residential property sold by the debtor since 1981, N.T. 4/28, p. 22, and arrived at $934,000 as the "market value" of this property. Debtor's appraisal does not include the value of debtor's machinery, equipment or furnishings.

We do not share the SBA's concern that this appraisal is deficient because the base appraisal was completed six years ago. Mr. Rehrer has credibly and competently explained the basis for the adjustments he has made to his initial appraisal, using base land valuation figures not attacked by the SBA. The SBA claims that debtor's figure includes the two pieces of property previously sold, but a clear examination of the transcript shows that Rehrer correctly excluded the value of those properties. N.T. 4/28, pp. 22. SBA also alleges that this appraisal is inadequate because no "comparable" sales are included. The SBA is correct that Rehrer provided no comparable sales of manufacturing facilities. But it was Rehrer's uncontradicted testimony that there has been only one other actual (as opposed to stock transfer) sale in the Boyertown area. N.T. 4/28, p. 28. And he described several "comparable" business properties, all located within a short distance of the debtor's facility. N.T. 4/28,

pp. 22, 24. Finally, the SBA complains that Rehrer has not recently entered the buildings. While we agree that this fact may have some bearing on his evaluation of the condition of the buildings, we do not think that the effect would significantly decrease his valuation.

We find it interesting that the SBA did not present any evidence attacking the underlying 1981 appraisal. Further, we find it extremely significant that the SBA never attacked or countered Rehrer's testimony that property values in the area have been increasing since 1981. Viewed together, this suggests that the value of the property is higher than the 1981 appraisal figure of $864,500.

The SBA's appraiser, Thomas Myers, Jr., testified that he used only the "Direct Sales Comparison Approach" in valuing this property. *See* Notes of Testimony, April 28, 1987 ("N.T. 4/28") pp. 11–15; SBA's Brief, Ex. "F," ("Myers' Appraisal"), pp. 49–50.[3] He claimed that "sufficient sales activity has occurred between users of this type of real estate so that adequate data can be compiled and applied to the value of the subject property." Myers' Appraisal, p. 49. Debtor's expert, of course, disagreed. Indeed, none of the five "comparables" on which Myers' appraisal is based are located in the same county as is debtor's property. We find this distinction to be critical in a case such as the instant involving a manufacturing facility. A prospective purchaser would be looking and paying for more than simply a site: the characteristics of the local labor force and shipping and transportation possibilities will be considerations in any such sale. Accordingly, examination of sites located in different counties is of limited utility.

Myers was considerably less familiar with the property and the Boyertown area

---

appropriate circumstances, take judicial notice of the contents of the record. *Veg-Mix, Inc. v. Dept. of Agriculture,* 832 F.2d 601, 607 (D.C.Cir. 1987). But we agree with the Third Circuit that the extent to which the concept of judicial notice should be applied "... depends to a large degree upon considerations of expediency and justice under the particular circumstances of a case, as well as upon what it is that a court is asked to notice." *Funk v. Commissioner of In-*

*ternal Revenue,* 163 F.2d 796 (3d Cir. 1947). It would be manifestly unjust for us to take notice of Rehrer's appraisal. It was not available at the time of trial for us to notice and allowing it into evidence now would eliminate the SBA's right to confront the opposing evidence.

**3.** This appraisal was admitted into evidence at the April 28th hearing.

than was debtor's expert. For example, Myers testified that he was unaware that debtor might have additional access to the rear part of its land, failed to consider possible subdivision of that land, Myers' Appraisal, pp. 9, 47, and attributed no value to that presently unused land. N.T. 4/28, p. 16. He also did not factor in the existence of a new highway linking Boyertown with the Philadelphia area, a major boon to local manufacturers. He stated that the condition of the property outweighed any increase in value that might have resulted from the highway, but he failed to provide the figures or comparisons that formed the basis of his opinion.

Although we are highly persuaded by the testimony of debtor's expert, certain adjustments must be considered. We suspect, from examining the pictures of the property, that Rehrer may have been a bit generous in his assessment of the condition of the property. Accordingly, we feel that the fair market value [4] of the property is in the range of $900,000.

### B. § 362(d)(2) Analysis

■ Section 362(d)(2) requires that we grant relief from the automatic stay when the debtor lacks equity in the subject property and the property is not necessary to an effective reorganization.[5] "Equity" has been defined in the case law to mean the "... difference between the property value and the total amount of liens against (the property)." *In re 6200 Ridge*, 69 B.R. 837,

842 (Bankr.E.D.Pa.1987) (parenthetical added). The burden of proof on the issue of equity is on the party seeking relief, in this case, the SBA. 11 U.S.C. § 362(g). Because the concept of equity requires us to compare property value against total liens, we must examine the evidence presented by the SBA on both of these points. As noted above, we find the value of the property to be $900,000. The SBA presented the unrefuted [6] testimony of William D. McMullen, loan officer, that the loan balance was approximately $379,000. N.T. 3/31, p. 6. In addition to this amount, debtor owed taxes and Hamilton Bank approximately $150,000 under a prior mortgage. N.T. 3/31, p. 6. Thus, the encumbrances at the time of this hearing totaled approximately $550,000.00. N.T. 3/31, p. 7. Comparing this total to the $900,000 value we have assigned to this property, we find that debtor has equity in the property. Since § 362(d)(2) is phrased as a conjunctive, we need not reach the issue of whether this property is necessary for an effective reorganization.

### C. § 362(d)(1) Analysis

■ Under § 362(d)(1), however, we may still grant relief from the automatic stay for "cause," including a lack of "adequate protection." The SBA has alleged as "cause" that the debt is approximately 55 months in arrears, and has alleged that debtor has no equity. *See* SBA's Motion, paras. 16, 18 and 20. The debtor respond-

---

**4.** The Code does not provide a specific standard of valuation to apply to determine whether a creditor is adequately protected. The legislative history suggests that the drafters were aware of this and, in fact, intended that the determination be made on a flexible, case by case basis.

In spite of the fact that Myers used a "Direct Sales Comparison Approach," Myers' Appraisal, p. 49, and Rehrer used a "market value" approach, we find that they were both asking us to determine the price which the property would bring in a fair sale in a competitive market with both buyer and seller acting prudently and without undue stimulus.

**5.** The complete text of this subsection reads:
 (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by termi-

nating, annulling, modifying or conditioning such stay—
 (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
 (2) with respect to a stay of an act against property under subsection (a) of this section, if—
 (A) the debtor does not have an equity in such property; and
 (B) such property is not necessary to an effective reorganization.

**6.** On cross examination, debtor attempts to challenge the SBA's calculation of interest. N.T. 3/31, pp. 8–10. The SBA managed on redirect examination, however, to clarify the somewhat tentative answers provided by Mr. McMullen on cross examination. Accordingly, we find these interest calculations to be correct.

ed with a general denial and asserted that the SBA has "... more than adequate protection for the amount due the SBA." *See* Answer, paras. 16, 18, and 20. On one level, the cases cited by both sides are correct.

The analytical flaw we find in both of these positions is that the parties have failed to consider the rigorous burdens of proof involved. We begin with the Code, which provides:

> (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—
>
> (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
>
> (2) the party opposing such relief has the burden of proof on all other issues.

11 U.S.C. § 362(g).

Going beyond the facile divisions of § 362(g), courts have found a requirement that the moving party make an initial presentation sufficient to create a prima facie case. *See e.g., In re Planned Systems, Inc.,* 78 B.R. 852, 16 B.C.D. 543 (Bankr.S.D. Oh.1987); *In re Tashjian,* 72 B.R. 968 (Bankr.E.D.Pa.1987); *In re Ronald Perlstein Ent., Inc.,* 70 B.R. 1005, 1007 (Bankr. E.D.Pa.1987); *In re Stranahan Gear Co., Inc.,* 67 B.R. 834 (Bankr.E.D.Pa.1986); *In re Compass Van & Storage Corp.,* 61 B.R. 230 (Bankr.E.D.N.Y.1986); *In re Rye,* 54 B.R. 180, 13 B.C.D. 853 (Bankr.D.S.C.1985); *Provident Mutual Life Ins. Co. v. Winslow Center Assocs. (In re Winslow Center Assocs.),* 32 B.R. 685 (Bankr.E.D.Pa. 1983); *In re Curtis,* 40 B.R. 795, 11 B.C.D. 1256 (D.Utah 1984); *Central Penn Nat'l Bank v. Zimmerman (In re Ludwig Ho-*

*nold Mfg. Co.),* 33 B.R. 722, 723, Bankr.L. Rep. para. 69,608 (Bankr.E.D.Pa.1983) *American Bank & Trust Co. v. Ram Mfg. (In re Ram Mfg.),* 32 B.R. 969 (Bankr.E.D. Pa.1983); *Clark Equipment Credit Corp. v. Kane (In re Kane),* 27 B.R. 902 (Bankr. M.D.Pa.1983); *Great American Credit Co. v. Tursi (In re Tursi),* 9 B.R. 450 (Bankr.E. D.Pa.1981). This requirement of a prima facie presentation flows from § 362(d)(1), which requires the court to grant relief "on request of a party in interest ...," 11 U.S. C. § 362(d), and "for cause ..." 11 U.S.C. § 362(d)(1). Thus, a prima facie case requires that movant make a "substantive showing of cause." *In re Kane,* 27 B.R. 902, 904. *Accord, In re Stranahan Gear Co., Inc.,* 67 B.R. 834, 837. The underlying philosophical basis for this requirement is that the debtor should not be forced to defend the automatic stay, one of a debtor's most fundamental protections, against general attacks; only upon a showing of cause should the debtor risk losing this protection. *Id.*

Unfortunately, the exact nature of the showing necessary to create that initial prima facie case is less than clear.[7] Three cases from this district illustrate the manner in which a prima facie case is made and the subsequent shifting of evidentiary burdens. In *Tursi,* the second mortgagee alleged that debtor was in default on payments. The court noted that this might, in some circumstances, constitute "cause" for relief. *In re Tursi,* 9 B.R. 450, 453. Debtor answered, however, with a denial. *Id.* Because of this, the court suggested that the creditor's prima facie case of non-payment should have included offering its

---

7. *See generally, In re Planned Systems, Inc.,* 78 B.R. 852, 859–60. In this case, Judge Cole noted that some courts require only that the moving party "... adduce evidence establishing the validity and perfection of its security interest, as well as the amount of the debt and other allowable costs and expenses secured by its claim." *Id.* at 859. He found that this was a "relaxed" approach to the prima facie case requirement, and instead required that the movant "... establish a legally sufficient basis, *i.e.,* cause, for relief." *Id.* at 860. Judge Scholl of this district, in an opinion cited by *Planned Systems,* has already ensconced us in that second camp. *See*

*In re Stranahan Gear Co., Inc.,* 67 B.R. 834, 837. We agree with Judge Scholl, and, independently, note that this second line of cases provides the most rational and comprehensive approach to the many types of § 362 scenarios we encounter. These are, as one court noted, mixed questions of fact and law. *In re Curtis,* 40 B.R. 795, 803. It is only upon examining the manner in which unique factual situations are merged into existing legal theories that we, and similarly, the debtor, can determine the true nature of the allegations raised. We therefore concur with the "cause" requirement previously articulated by Judge Scholl.

business records into evidence to support the allegations of non-payment. *Id.* at 453.

The movant in *Winslow Center* alleged that the slim equity cushion constituted "cause." *In re Winslow Center Associates,* 32 B.R. 685, 687. Movant presented evidence showing an equity cushion of $32,-000 on property with a fair market value of $500,000. The court found this sufficient to create a prima facie case. *Id.* The responsibility then shifted to the debtor to show that the movant was receiving adequate protection, defined as the same "measure" of protection that movant would have received outside of the bankruptcy, but not necessarily the same "type" of protection. *Id.* Debtor failed, however, to make a showing of any other adequate protection. *Id.*

■■■ When a movant alleges that the stay should be lifted because no equity cushion exists, and the parties stipulate that there is no equity cushion, the creditor has established his prima facie case. *In re Ludwig Honold Mfg. Co.,* 33 B.R. 722, 723, Bankr.L.Rep. para. 69,608 (Bankr.E.D.Pa. 1983).

In the instant case, the SBA has argued that it is not adequately protected because no equity cushion exists in the property and that cause exists because 55 payments have been missed. The debtor has resoundly denied both allegations. We have already held that the SBA has failed in its attempt to prove that debtor lacked equity.[8] But § 362(d)(1) still requires us to consider whether movant has made a prima facie case for any other type of cause. A lack of adequate protection is one type of cause, and could be shown with evidence

illustrating the lack of an equity cushion.[9] *In re 1606 New Hampshire Ave. Assocs.,* 85 B.R. 298, 310 (Bankr.E.D.Pa.1988) (presence of equity cushion a "powerful factor" in determining whether adequate protection existed). The "equity cushion" is the value of the property above the amount owed to the secured creditor. *In re Heath,* 79 B.R. 616, 618, 16 B.C.D. 960 (Bankr.E.D. Pa.1987). Functionally, the cushion serves to shield the creditor from the danger that the property will decrease in value during the time the stay remains in effect. *Id.* Because of its role as a shield, courts factor into their analysis the chance that the cushion will erode. *See e.g., In re Heath,* 79 B.R. 616, 619 & n. 9, and cases cited therein. The sufficiency of the equity cushion is a function of the size of the cushion and the rate at which it is being eroded.

A substantial equity cushion exists in this case. We have assigned a value of $900,000 to this property, from which we subtract $550,000, yielding a total equity cushion of $350,000. Expressed as a percentage (amount of equity divided by amount of encumbrance), this is an 63% equity cushion.[10] It is undoubtedly higher because the value should include the value of the machinery and equipment, figures not made available to us by either party.

There is no doubt that this cushion is eroding rapidly. Loan officer McMullen testified that interest was accruing at a daily rate of $100.52 N.T. 3/31, pp. 7, 20, which equals approximately $36,698 per year. Thus, debtor's substantial equity cushion is being eroded by the relatively insubstantial amount of $36,698 each

---

8. We agree with Judge Scholl's analysis that the concepts of valuation used in § 362(d)(1) and § 362(d)(2) are quite similar, with the distinction that § 362(d)(1) focuses on protection of the movant's interest, while § 362(d)(2) requires a focus on the debtor's equity, and thus the debtor's interest. *In re Gulph Woods Corp.,* 84 B.R. 961, 972–73 (Bankr.E.D.Pa.1988). Neither party in the instant case, however, has asked us to use anything other than the fair market value. Under the facts of the instant case, we do not see any reason why this standard would not adequately measure both the debtor's and the creditor's interests.

9. The Code provides a non-inclusive list of methods by which adequate protection may be provided. 11 U.S.C. § 361. An equity cushion is not included among the specific examples, but it falls within the catch-all equivalent" of movant's interests. 11 U.S.C. § 361(3).

10. Even if we assume that the property has not appreciated since the issuance of the 1981 appraisal, a substantial cushion still exists. Start with the 1981 appraised value, and subtract the $550,000 in mortgages, for an equity cushion of $314,500, or 57%.

year.[11] We disagree with the SBA's broad suggestion that erosion of the cushion alone should justify relief from the stay. The West Virginia case cited by movant can be distinguished because it involved a property that was depreciating in value. *In re 5–Leaf Clover Corp.*, 6 B.R. 463 (Bankr.S.D.W.Va.1980). The SBA has not shown us the slim and rapidly eroding equity cushion which can, in some circumstances, constitute a prima facie case. *In re Winslow Center*, 32 B.R. 685, 687.

■ The next question becomes whether the SBA has shown as a prima facie case that the failure to make mortgage payments constitutes "cause" for relief from the stay. Debtor does not deny that payments have been missed. The *Tursi* decision suggests that this may constitute a prima facie case. *In re Tursi*, 9 B.R. 450. A failure by the debtor to make mortgage payments can, under some circumstances, constitute § 362(d)(1) cause. *In re Wright, Egan & Assoc.*, 60 B.R. 806, 807 (Bankr.E.D.Pa.1986) (failure to make any complete payments from the inception of the mortgage); *In re Graves*, 59 B.R. 928, 929 (Bankr.E.D.Pa.1986) (default of nearly six years; complete failure to pay over a period of 3 years); *In re Frascatore*, 33 B.R. 687, 688 (Bankr.E.D.Pa.1983) (only 2 payments over 11 month period); *Royal Bank of Pennsylvania v. Three Tuns (In re Three Tuns, Inc.)*, 35 B.R. 110, 111 (Bankr. E.D.Pa.1983); *Ukrainian Savings & Loan Assn. v. Trident Corp.*, 22 B.R. 491, 495 (E.D.Pa.1982); *In re Hinkle*, 14 B.R. 202 (Bankr.E.D.Pa.1981) (failure to make any payment over a period of 10 months). These cases are distinguished by the feature that they lack: a discussion of debtor's equity. As such, they can be categorized by the statement that when no equity cushion exists, a lack of monthly payments may be grounds for granting § 362 relief.

But the case law suggests that a further distinction must be made because this case involves more than a simple failure to make mortgage payments. We must consider how this failure to make payments should be weighed in a case in which there is a substantial equity cushion—what to do when a prima facie case is presented but in which another form of (arguably adequate) protection exists. At one end of the spectrum, even the existence of an equity cushion will not prevent relief from stay if the movant can show other overwhelming cause. As we have previously noted, "... even if the security interest is adequately protected, the Court could grant relief for other "cause," such as the debtor's continued failure to tender periodic mortgage payments." *In re Augustus Court Assoc.*, 46 B.R. 619, 620 (Bankr.E.D.Pa.1985) (substantial equity cushion but 20 monthly payments skipped; court grants relief). *Accord, In re McMartin Industries, Inc.*, 62 B.R. 718, 723 (Bankr.D.Neb.1986) (failure to pay taxes and notify the secured creditor constitutes sufficient disregard of the law and rights of the secured creditor to create cause).

At the other end of the spectrum, "(i)t is well established that an equity cushion alone, even when a debtor is delinquent in payments due to a secured creditor and the equity cushion seems certain to erode, may be in itself sufficient to avert a § 362(d) motion." *See In re 1606 New Hampshire Ave. Assocs.*, at 310–11, and cases cited therein.

These facially conflicting cases suggest that even if a movant makes a prima facie case for a failure to make payments, that failure, along with the existence of an equity cushion, are merely factors that the court must weigh in its equitable assessment of whether adequate protection exists. This balancing process is described in a recent decision from this district, exhorting us to consider "all relevant factors," including "... the value of the collateral, the likelihood that it will depreciate or appreciate over time, the prospect for a successful reorganization of the Debtor's affairs by means of the Plan, and the Debtor's performance in accordance with the Plan." *In re Tashjian*, 72 B.R. 968, 973 (Bankr.E.D.Pa.1987). Similar equitable

---

**11.** Continued inability to pay Hamilton Bank on its first mortgage may cause more erosion, although we have been presented with no figures with which to quantify such erosion.

considerations are often invoked in these cases. *See e.g., In re McCollum*, 76 B.R. 797, 799, 17 C.B.C.2d 431, 16 B.C.D. 388 (Bankr.D.Or.1987) (large equity cushion, but court grants relief because debtor could suffer a substantial loss in the event of foreclosure); *In re Universal Profile, Inc.*, 5 B.R. 572, Bankr.L.Rep. para. 67,696 (Bankr.N.D.Ga.1980) (existence of equity cushion and court's conclusion that debtor had virtually no prospects for a successful reorganization).

## II. APPLICATION OF § 362(d)(1) TO THE INSTANT FACTS

■ This balancing process requires us to consider an unusual facet of cases such as the instant in which an equity cushion exists but movant alleges that mortgage payments have been skipped. An equity cushion exists because the value of the secured property is greater than the total of the debts secured against it. Those debts include payments that debtor has failed to make on this mortgage. Thus, the dollar total of the missed payments, including the lengthy period of time during which the payments have been withheld, are factored into the "equity cushion" analysis. We find that when a large equity cushion exists, the sole fact that debtor has failed to make mortgage payments will be of minimal significance.

Evaluation of other factors also suggests that relief should be denied at the present time. We strongly suspect that the property will appreciate. *See* Myers' Appraisal, p. 4 (diversification of Berks Co.), p. 5 (gradual growth of Berks Co.); p. 7 (stability of Boyertown area); N.T. 4/28, p. 26 (testimony of Rehrer regarding expressway and Route 422 bypass expansion). It is difficult for us to assess the possibility of a successful reorganization. The SBA is correct that this debtor has had a long breathing spell—in excess of 3 years—and has not yet proposed a Plan. We suspect that this is due, in part, to the many legal proceedings in which debtor has been embroiled. We are also aware, however, that this is the property on which debtor operates its business, and that it would be extremely difficult, if we allowed the SBA to foreclose, for debtor to rent a suitable facility on which to manufacture utility truck bodies. The debtor plans to maintain a portion of the property for manufacturing and to sell a portion of the land to reduce the debt owed to the SBA and Hamilton Bank. *See* Debtor's Brief, p. 3. This seems like a practical plan; whether it is feasible will be determined after the parties have had a chance to respond to a plan and disclosure statement. Granting § 362 relief in this case would completely destroy this debtor's chances of a successful reorganization. On the other hand, the SBA will not be unduly prejudiced by allowing the stay to continue for an additional period of time. Because we do not want to suggest that this stay should continue *ad infinitum* on these facts, however, we are denying relief without prejudice to the SBA's right to refile on any later date.

Section 362(g), of course, suggests that debtor has the burden of proof on adequate protection. The comprehensiveness and credibility of Rehrer's testimony is not undercut by debtor's failure to submit at trial a written appraisal. Rehrer's testimony has persuaded us that the debtor has significant equity, a basis for our conclusion that a large equity cushion exists. An equity cushion can, of course, constitute adequate protection. Weighing this with the other factors noted above, we hold that the SBA's interests are, at present, adequately protected.

An appropriate order follows.

## ORDER

AND NOW this 10th day of May, 1988, it is hereby ORDERED that the SBA's motion requesting relief from the automatic stay is hereby DENIED without prejudice.