# In re CAMBRIDGE WOODBRIDGE APARTMENTS, L.L.C., Debtor.

## No. 02–43728.

United States Bankruptcy Court, N.D. Ohio.

May 8, 2003.

only $400.00 a month.

Andrew W. Suhar, Esq., Melissa M. Macejko, Esq., Youngstown, OH, for Cambridge Woodbridge Apartments, L.L.C.

Mark A. Beatrice, Esq., Youngstown, OH, Christine M. Pierpont, Squire, Sanders & Dempsey. L.L.P., Cleveland, OH, Keith Shumate, Squire, Sanders & Dempsey L.L.P., Columbus, OH, for Old West Annuity & Life Insurance Company.

John M. Steiner, Esq., Kimberly A. Coleman, Esq., Leech, Tishman, Fuscaldo & Lampl, LLC, Pittsburgh, PA, for Pacific Coast Investment Company.

Kathryn A. Williams, Esq., Cleveland, OH, for National City Bank.

Saul Eisen, Cleveland, OH, United States Trustee.

Lenore Kleinman, Office of the U.S. Trustee, Cleveland, OH, for United States Trustee.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Chief Judge.

On October 3, 2002, Old West Annuity & Life Insurance Company ("Old West"), a secured creditor, filed a motion for dismissal or relief from the automatic stay under § 362 of the United States Bankruptcy Code. Cambridge Woodbridge Apartments, L.L.C. ("Debtor") opposes Old West's motion and seeks to retain possession and use of Cambridge Woodbridge Apartments ("Woodbridge"). A hearing was held on this matter on October 31, 2002. Mark A. Beatrice, Esq. appeared on behalf of Old West. Andrew W. Suhar, Esq. appeared on behalf of Debtor. Under 28 U.S.C. § 157(b)(2)(G), a motion to terminate, annul or modify the automat-

ic stay is a core proceeding. The following represents this Court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## DISCUSSION

### I. FACTS

Debtor is an Ohio limited liability company whose sole asset is real estate, commonly known as Woodbridge. Woodbridge is located at 135 East Cook Road in Mansfield, Richland County, Ohio, and consists of approximately 180 separate apartment units, divided among 15 buildings. On December 31, 2001 Debtor obtained a loan from Metwest Mortgage Services, Inc. ("Metwest") in the principal amount of Three Million Seven Hundred Thirty Thousand Dollars ($3,730,000.00) at an interest rate of 12% per annum. This loan was secured by a mortgage on Woodbridge. It enabled Debtor to purchase Woodbridge for Three Million Nine Hundred Thousand Dollars ($3,900,000.00). Debtor began operating its business on January 1, 2002.

The note and mortgage on Woodbridge were subsequently assigned to Old West. The note and assignment were duly recorded in the Office of the Recorder of Richland County, and financing statements were duly filed in the Office of the Recorder of Richland County and with the Ohio Secretary of State. After Debtor failed to make the mortgage payment that was due on March 1, 2002, Old West sent Debtor a notice of default on April 9, 2002. On May 14, 2002, the loan was accelerated and became immediately due and payable in full. On June 20, 2002, less than six months after Debtor began operating its business, Old West filed an action to foreclose the mortgage. On August 21, 2002, the Court of Common Pleas for Richland County, Ohio, heard evidence and arguments on Old West's motion to foreclose

on the mortgage. At the conclusion of the hearing, the Court of Common Pleas issued an order appointing a receiver for Woodbridge. On August 22, 2002 Debtor commenced this bankruptcy proceeding by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

Old West's motion filed on October 3, 2002 requested an order dismissing Debtor's case as having been filed in bad faith, or, in the alternative, conditioning or dissolving the automatic stay pursuant to § 362(d)(1) and § 362(d)(2). Old West argued that Debtor's case was filed in bad faith because Debtor has one asset and Debtor evaded the Court of Common Pleas for Richland County, Ohio, order by filing for bankruptcy. Old West also alleged that Debtor made improper pre-petition payments to affiliated companies after it received the loan from Metwest. These affiliated companies have also filed for bankruptcy and their cases were consolidated with Debtor's case on January 23, 2003 pursuant to an order issued by this Court. Old West also argued that it is entitled to relief under § 362(d)(1) or § 362(d)(2) because Debtor lacks equity in Woodbridge. Old West also alleged that Debtor lacks the ability to reorganize effectively. On October 29, 2002 the United States Trustee filed a response in support of Old West's motion for dismissal or relief from stay.

Debtor filed a response and memorandum in opposition to the motion of Old West seeking dismissal or relief from the automatic stay on October 30, 2002. Debtor argued that its case was not filed in bad faith because Debtor is a real business entity with operations and revenue. Debtor also argued that Old West is not entitled to relief under § 362(d)(1) because the value of Woodbridge is not declining, Debtor maintains adequate insurance coverage and Debtor is making adequate pro-

tection payments of approximately Nineteen Thousand Two Hundred Fifty Dollars ($19,250.00) per month pursuant to the stipulated interim orders authorizing Debtor's use of cash collateral of September 25, 2002 and October 8, 2002. Debtor argued that Old West is not entitled to relief under § 362(d)(2) because Woodbridge is necessary for Debtor's reorganization which is in prospect.

On October 31, 2002 this Court held a hearing on Old West's motion for an order dismissing Debtor's case as having been filed in bad faith, or, in the alternative, conditioning or dissolving the automatic stay pursuant to § 362(d)(1) and § 362(d)(2). This Court heard testimony regarding the fair market value of Woodbridge or the value of Old West's secured claim. Thomas Coppola, the duly appointed appraiser, testified that Woodbridge's fair market value as of October 31, 2002 was Three Million Three Hundred Thousand Dollars ($3,300,000.00). Mr. Coppola used a capitalization rate of 13% in making this determination because of the expenditures necessary to fix and replace various kitchen appliances and Woodbridge's relatively high vacancy rate. Mr. Coppola's appraisal took into consideration the value and sales of comparable properties in the same market area as Woodbridge. Mr. Coppola also personally performed a thorough inspection of Woodbridge prior to testifying at the hearing.

Old West called appraiser Ted McManus to testify to Woodbridge's fair market value. Mr. McManus testified that Woodbridge was worth Four Million Seven Hundred Thousand Dollars ($4,700,000.00) on December 31, 2001—the date Debtor purchased Woodbridge for Three Million Nine Hundred Thousand Dollars ($3,900,000.00). In reaching this value Mr. McManus performed a "desk review" in December 2001 of an appraisal that was prepared by another appraiser, Deborah Wilcox. Ms. Wilcox's appraisal was performed in July 2001. She apparently used a capitalization rate of 10% in making her valuation. Mr. McManus testified that Woodbridge's fair market value as of October 31, 2002 is probably at least Three Million Nine Hundred Thousand Dollars ($3,900,000.00). Mr. McManus testified he drove by Woodbridge a week prior to the hearing and reviewed, for the second time, the appraisal that was performed by Ms. Wilcox in July 2001. Mr. McManus never personally verified the data upon which Ms. Wilcox relied.

On December 18, 2002 Old West filed a memorandum in support of its motion for relief from the automatic stay. In this memorandum Old West argued that it is entitled to relief from the automatic stay pursuant to § 362(d)(3). Old West argued that it is entitled to receive monthly interest payments equal to no less than Twenty Thousand Dollars ($20,000.00) per month, and that Debtor can not feasibly make such payments to Old West given its current income and expenses.

Debtor filed a plan of reorganization on March 14, 2003. The plan of reorganization provides, in part, that if Debtor fails to pay Old West the amount of Old West's secured claim within six months from the confirmation date, Debtor will tender a quit claim deed to Woodbridge without prejudice to Old West's unsecured claim provided for in the plan. Debtor's plan of reorganization lists the amount of Old West's secured claim at Three Million Three Hundred Thousand Dollars ($3,300,000.00).

On April 8, 2003 Old West filed a supplemental memorandum in support of its previous motion for relief from the automatic stay. Debtor has been experiencing some difficulty in tendering its adequate protection payments to Old West in a timely

fashion. Debtor's payment for the second half of the month of February was returned for insufficient funds. Debtor, however, did provide a cashier's check replacing said payment within four business days from the date this payment was returned. Apparently, Debtor's cash flow is hampered by an elevated number of derelict tenants occupying units in Woodbridge, whose rent checks sometimes are returned for insufficient funds. Old West also asserts that Debtor has failed to pay the real estate taxes that are due and owing for the first half of the year 2002 for Woodbridge.

In light of Old West's recent and past concerns regarding the economic viability of Woodbridge, this Court will now consider whether Old West is entitled to relief from the automatic stay. Thus, this Court must determine whether Debtor's petition was filed in bad faith and whether Old West is entitled to relief under § 362(d)(3), § 362(d)(2) or § 362(d)(1) of the Bankruptcy Code.

## II. LEGAL ANALYSIS

### A. Bad Faith

■■■ This Court is not persuaded that Debtor's bankruptcy was filed in bad faith. The Sixth Circuit Court of Appeals has recognized that a debtor's bad faith in filing a petition for bankruptcy is a basis for lifting the automatic stay. *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co. (In re Laguna Assocs. Ltd. P'ship)*, 30 F.3d 734, 738 (6th Cir.1994); *see also Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir.1996); *Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir.1989); *State of Idaho, Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir.1986); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1071–72 (5th Cir.1986). While no single fact is dispositive, the Sixth Circuit Court

of Appeals has utilized the following factors in determining whether a bankruptcy is filed in bad faith:

(1) the debtor has one asset;

(2) the pre-petition conduct of the debtor has been improper;

(3) there are only a few unsecured creditors;

(4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court;

(5) the debtor and one creditor have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford;

(6) the filing of the petition effectively allows the debtor to evade court orders;

(7) the debtor has no ongoing business or employees; and

(8) the lack of possibility of reorganization.

*Laguna Assocs. Ltd. P'ship*, 30 F.3d at 738 (citations omitted).

In *Laguna*, the Sixth Circuit Court of Appeals held that the creditor of a one-asset entity that was created on the eve of foreclosure in order to isolate an insolvent property was entitled to relief from the automatic stay because the debtor had filed in bad faith. A partnership had borrowed funds from a surety company for the construction of an apartment complex. The partnership subsequently transferred the encumbered property to another entity, and that entity filed for Chapter 11 bankruptcy the following day. This one-asset entity was "not engaged in an ongoing business, lacked a sufficient cash flow, had few unsecured creditors, and claimed as its sole asset a heavily encumbered property." *Id.* The purpose of its very existence was to file for bankruptcy. Thus, there was sufficient evidence to sup-

port a finding that the debtor filed in bad faith.

The Debtor before this Court is clearly distinguishable from the one-asset entity in *Laguna.* Debtor is a real business entity with operations and revenue. Debtor was not created on the eve of bankruptcy for the purpose of isolating insolvent property and its creditors. Debtor filed for bankruptcy for the purpose of reorganizing its debts in order to return to a viable business. Accordingly, the circumstances that warranted a finding of bad faith in *Laguna* appear absent in this case.

That is not to say that there are not any similarities between the one-asset entity in *Laguna* and Debtor. In considering such similarities, however, this Court must be mindful of the Bankruptcy Reform Act of 1994 in which Congress added § 362(d)(3) of the Code. Section 362(d)(3) provides relief from the automatic stay to creditors with an interest in or who bring an action against single asset real estate. Congress added this section in order to impose an expedited time frame for filing a plan in a single asset real estate case. S. REP. NO. 103–168, at 71 (1993) ("This amendment will ensure that the automatic stay provision is not abused, while giving the debtor the opportunity to create a workable plan of reorganization."); 140 CONG. REC. H10752, H10764 (daily ed. October 4, 1994) (statement of Rep. Brooks) ("Without bankruptcy reform, companies, creditors, and debtors alike will continue to be placed on endless hold until their rights and obligations are adjudicated under the present system—and that slows down new ventures, new extensions of credit, and new investments."); *see In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D.Ohio 1995) (Congress was motivated to accord relief "where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured, and where there is no real hope that the owner can come forth with a viable confirmable Chapter 11 plan"). Accordingly, it does not appear that Congress intended to preclude debtors involved in such cases from the relief afforded by Chapter 11 of the Bankruptcy Code. *See In re Nat'l/Northway Ltd. P'ship*, 279 B.R. 17, 30 (Bankr. D.Mass.2002).

This addition to § 362(d) is significant because most single asset real estate bankruptcies, by their very nature, fit the bad faith standard utilized by the Six Circuit Court of Appeals in *Laguna.* Most single asset real estate bankruptcies involve one asset, few unsecured creditors and a bankruptcy filing that occurs after an unsuccessful defense in a state court foreclosure proceeding. The automatic stay effectively allows the *debtor to avoid a state court's* order that property be posted for foreclosure. Indeed, the automatic stay is designed to give "the honest debtor an opportunity to protect his assets for a period of time so that the resources might be marshalled to satisfy outstanding obligations." *Laguna*, 30 F.3d at 737. Most of the good faith factors enumerated in *Laguna* are truisms in the context of a single asset real estate bankruptcy. Accordingly, the purpose underlying § 362(d)(3) would be undermined if this Court were to give due weight to the similarities that exist between the one-asset entity in *Laguna* and Debtor. Stated differently, if debtors in single asset real estate cases were deemed to have filed in bad faith due to the very nature of their business, § 362(d)(3) would never have the opportunity to provide relief from the automatic stay to creditors with an interest in single asset real estate cases. It is not clear that the Sixth Circuit Court of Appeals intended such a result when it decided *Laguna.*

In sum, Debtor's bankruptcy was not filed in bad faith because Debtor is a real business entity with operations and revenue and was not created on the eve of bankruptcy for the purpose of isolating insolvent property. The fact that Debtor's bankruptcy involves one asset and a bankruptcy filing that occurred after an unsuccessful defense in a state court foreclosure proceeding are not helpful factors because this case involves single asset real estate. After considering the totality of the circumstances, Old West's motion to lift the automatic stay on such grounds is overruled.

## B. Section 362(d)(3)

Old West also seeks relief from the automatic stay under § 362(d)(3). As previously stated, § 362(d)(3) provides relief from the automatic stay to creditors with an interest in single asset real estate. Section 101(51B) defines single asset real estate as follows:

> [R]eal property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto having aggregate noncontingent, liquidated secured debts in an amount no more than $4,000,000[.]

11 U.S.C. 101(51B).

Debtor's sole asset is Woodbridge, which consists of approximately 180 rental units. Debtor paid Three Million Nine Hundred Thousand Dollars ($3,900,000.00) on December 31, 2001 for this property and does not contend that it has subsequently appreciated in value. Thus, Woodbridge is a residential real property with more than four residential units, which generates substantially all of the income of Debtor and

has a liquidated secured debt in an amount less than Four Million Dollars ($4,000,-000.00). Accordingly, this asset is a "single asset real estate" under the Bankruptcy Code.

Section 362(d)(3) provides relief from the automatic stay to creditors with an interest in single asset real estate. Section 362(d)(3) provides in relevant part:

> (d) On request of a party in interest and after notice and a hearing, the *court shall grant relief from the stay* ... by terminating, annulling, modifying, or conditioning such stay—
>
> > (3) with respect to a stay of an act against single asset real estate ... by a creditor ... *unless*, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90–day period)—
> >
> > > (A) the *debtor has filed a plan of reorganization* that has a reasonable possibility of being confirmed within a reasonable time; *or*
> > >
> > > (B) the *debtor has commenced monthly payments* to each creditor whose claim is secured by such real estate ..., which payments are in an amount equal to interest at a current fair market rate on the value of the creditor's interest in the real estate.

11 U.S.C. § 362(d)(3)(A) and (B) (emphasis added). Accordingly, Debtor must either file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time or make monthly payments in an amount equal to interest at current fair market rate on the value of Old West's interest in Woodbridge within 90 days after the entry of the order for relief.

Debtor filed for relief under Chapter 11 of the Bankruptcy Code on August 22,

2002. Debtor did not file a plan of reorganization within 90 days since the entry of the order for relief (the petition date). Debtor, however, has been making monthly cash collateral payments in the amount of Nineteen Thousand Two Hundred Fifty Dollars ($19,250.00) per month. Section 362(d)(3) does not provide that the debtor must make interest payments but payments that "are in an amount equal to interest at a current fair market rate ...." 11 U.S.C. § 362(d)(3)(B). This Court considers Debtor's adequate protection payments in the amount of Nineteen Thousand Two Hundred Fifty Dollars ($19,250.00) to be payments in an amount equal to interest at a current fair market value rate of Old West's interest in Woodbridge. Accordingly, Old West is not entitled to relief under § 362(d)(3).

### C. Section 362(d)(2)

Old West also seeks relief from the automatic stay under § 362(d)(2). Section 362(d)(2) provides for lifting of the automatic stay with respect to "an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization[.]" 11 U.S.C. § 362(d)(2)(A) and (B). The creditor bears the burden of proving that the debtor lacks equity in the property. 11 U.S.C. § 362(g)(1). Upon such a showing, the debtor then bears the burden of proving that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2).

Old West has met its burden of proving that Debtor lacks equity in Woodbridge. Equity is "the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 392 (6th Cir.1986) (quoting *Pistole v. Mellor (In re Mellor),* 734 F.2d

1396, 1400 (9th Cir.1984)). Thus, the debtor lacks equity in the property when the market value of the property is less than the amount of debts that it secures. Old West's mortgage loan claim is presently in excess of Four Million Dollars ($4,000,-000.00) and Debtor does not contend that the market value of Woodbridge is greater than this amount. Accordingly, Debtor lacks equity in Woodbridge.

In order to meet its burden of proving that property is necessary for an effective reorganization, a debtor must prove that the property is important to the reorganization and that the planned reorganization is feasible. *United Savs. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988); *see* 2 Lawrence P. King et al., Collier on Bankruptcy ¶ 362.07[4][b] (15th ed.2003). A planned reorganization is feasible when there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers,* 484 U.S. at 376, 108 S.Ct. 626. The debtor's burden of showing a reasonable possibility of a successful reorganization increases with time in that during the early stages of a proceeding a less detailed showing is sufficient. *Sumitomo Trust & Banking Co., Ltd., Los Angeles Agency v. Holly's, Inc. (In re Holly's, Inc.),* 140 B.R. 643, 699 (Bankr.W.D.Mich.1992); *Am. State Bank v. Grand Sports, Inc. (In re Grand Sports, Inc.),* 86 B.R. 971, 974 (Bankr.N.D.Ind.1988). In order to prevail under § 362(d)(2) the debtor does not have to prove that its plan for reorganization is confirmable, but only that there is a reasonable possibility that a reorganization is possible. *Grand Sports, Inc.,* 86 B.R. at 974.

Debtor's sole asset is Woodbridge; thus, it is clear that Woodbridge is necessary for an effective reorganization. Debt-

or filed a Chapter 11 plan of reorganization on March 14, 2003. Without entering into a detailed analysis of Debtor's plan of reorganization under 11 U.S.C. § 1129, its does not appear that Debtor's plan of reorganization is not feasible; i.e., Debtor has met its burden of showing that there is a reasonable possibility that a reorganization will occur. Accordingly, Old West is not entitled to relief under § 362(d)(2).

### D. Section 362(d)(1)

Old West's final argument is that it is entitled to relief from the automatic stay under § 362(d)(1) of the Bankruptcy Code. Section 362(d)(1) provides for lifting of the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" 11 U.S.C. § 362(d)(1). The concept of adequate protection is derived from the Fifth Amendment protection of property interest. "The principle of adequate protection reconciles the competing interests of the debtor, who needs time to reorganize free from harassing creditors, and the secured creditor, on the other hand, who is entitled to constitutional protection for its bargained-for property interest." *In re Planned Sys., Inc.,* 78 B.R. 852, 861 (Bankr.S.D.Ohio 1987). In order for such a party in interest to prevail under § 362(d)(1), it must establish a *prima facie* case that includes the following:

> (1) a demonstration of a debt owing from the debtor to [the creditor]; (2) a valid security interest possessed by [the creditor] that secures the debt; and (3) a decline in the value of the collateral securing the debt combined with debtor's failure to provide adequate protection of [the creditor's] interest.

*In re Howery,* 275 B.R. 852, 854 (Bankr. S.D.Ohio 2002). If the party in interest or the secured creditor satisfies this burden, then the debtor must prove that the secured creditor is adequately protected. *Id.* (citing *Planned Sys., Inc.,* 78 B.R. at 860).

Old West has clearly demonstrated the existence of a debt owing from Debtor to Old West and the existence of a valid security interest in Woodbridge. Old West asserts that Debtor has failed to provide adequate protection of Old West's interest in Woodbridge. To determine whether a secured creditor's interest is adequately protected this Court considers (1) the value of the interest; (2) the risk that the value of the encumbrance will decline; and (3) whether the debtor's adequate protection proposal protects value against such risks. *Martin v. U.S. of Am., Commodity Credit Corp. (In re Martin),* 761 F.2d 472, 477 (8th Cir.1985); see *Planned Sys. Inc.,* 78 B.R. at 862. Adequate protection is never necessary unless there is a threat to the value of the encumbrance.

Based on the expert testimony given before this Court on October 31, 2002, this Court finds that Woodbridge was worth approximately Three Million Three Hundred Thousand Dollars ($3,300,-000.00) on August 22, 2002 when Debtor filed for bankruptcy. This Court finds the appraisal of Woodbridge offered by Mr. Coppola to be more reliable than the appraisal offered by Mr. McManus. Mr. Manus' appraisal was based on a report prepared by Ms. Wilcox that was more than one year old at the time of the hearing; thus, Mr. McManus had little personal knowledge concerning the value of Woodbridge. Mr. McManus' "desk review" of Ms. Wilcox's report merely verified the methodology used in Ms. Wilcox's report—it did not verify the data upon which Ms. Wilcox relied. While expert witnesses can rely on hearsay in formulating their opinions, Mr. Coppola's appraisal was based on more accurate data and a more thorough

analysis. Thus, the value of Old West's secured interest is Three Million Three Hundred Thousand Dollars ($3,300,000.00). The amount of Old West's interest in Woodbridge in excess of this amount is an unsecured debt under 11 U.S.C. § 506(a).

Having determined the value of Old West's interest in Woodbridge, this Court must consider the risk that the value of Woodbridge will decline and whether Debtor is protecting the value of Woodbridge. There was no evidence presented at the hearing to suggest that the value of Woodbridge is currently declining. Debtor is making adequate protection payments in the amount of approximately Nineteen Thousand Two Hundred Fifty Dollars ($19,250.00) and maintains insurance on Woodbridge in excess of its fair market value. Thus, Old West has failed to demonstrate that Woodbridge is declining in value and that its interest in Woodbridge is not adequately protected. Accordingly, Old West is not entitled to relief under § 362(d)(1). This Court further notes that Debtor's plan of reorganization provides that if Debtor fails to pay Old West the amount of Old West's secured claim within six months from the confirmation date, Debtor will tender a quit claim deed in Woodbridge without prejudice to its unsecured claim provided under the plan.

### CONCLUSION

In conclusion this Court notes that while Old West is presently not entitled to relief under § 362(d), this does not foreclose Old West from renewing its motion at a later point in time. This Court retains jurisdiction over the parties and assets in the event Debtor's plan of reorganization fails or Debtor fails to tender adequate protection payments on a timely basis.